PHENIX MUTUAL FIRE INSURANCE CO. *v.* ARTHUR J. ROUILLARD,

*Insurance Commissioner.*

*Dudley W. Orr* (by brief and orally), for the plaintiff.

*Frank R. Kenison,* Attorney-General, and *Ernest R. D'Amours,* Assistant Attorney-General (*Mr. D'Amours* orally), for the defendant.

PAGE, J.  The plaintiff was organized under general law in 1886 to do business as a mutual fire insurance company.  Special acts of the legislature permit the plaintiff from time to time to issue guaranty capital in an amount not in excess of $200,000, and bearing dividends not in excess of twelve per cent a year, provided that the issue is authorized by a majority vote of any corporate meeting duly called for that purpose.  The vote authorizing the issue may fix the terms of preference as to both dividends and liquidation, and may also fix the voting power of the stock.  The plaintiff is also authorized to proceed in the manner provided by general laws for issuing stock.  Laws 1913, *c.* 314; Laws 1915, *c.* 255; Laws 1921, *c.* 252.

The stock issue proposed by the plaintiff and not "approved" by the defendant, is of $50,000 of prior preferred stock in guaranty capital, entitled to dividends at three per cent, with priority as to both dividends and liquidation over all other issues of guaranty stock. The par value is fixed at five dollars a share.  Under the proposal, certain shares of the preferred A and preferred B stock would be retired (and this part of the proposal has been "approved" by the defendant) and the new stock added would make the total guaranty stock amount to $128,445, in shares of five dollars par value.  Since the par is within the limits fixed by statute (Laws 1933, *c.* 145), the proposed issue meets all the requirements of the acts of the legislature.

The defendant has nevertheless refused to "approve" the issue of new stock, alleging that the plaintiff's guaranty stock is subject to the provisions of P. L., *c.* 274, which he claims gives him a wide discretion.  We need not decide what, if any, discretion this act gives to the defendant, since it applies only when a company avails itself of the act (*s.* 2).  Even if it applies to mutual companies at all, a matter of doubt not here resolved, the act has never been invoked by the plaintiff, as far as appears, hence no further consideration of it is involved.

The defendant places his refusal also upon the general ground that the present guaranty fund is sufficient for the best interests of the plaintiff, its shareholders and its policyholders.  He argues that

his duties concerning issues such as that proposed are very broad, because he must report violations of the insurance law to the Attorney-General, because he must investigate complaints made by any person, because he may examine into the affairs of any company, may fix reasonable rates, may recommend measures to the legislature, and may pass on the suitability of agents for licensing. It is enough to observe (1) that the argument is a *non sequitur*, and (2) that the powers referred to exist by reason of specific grants by the legislature to the defendant. No specific power to exercise the discretion now claimed can be found in any act that has come to our attention.

A further obstacle to the defendant's claim is the clear legislative grant to the plaintiff of the power to determine the questions of what is wise. These questions the plaintiff has passed upon. It has its own honest opinion as to what is wise. The power to make the decision, three times granted by the legislature, has never been revoked or amended. Moreover, we can find no evidence of legislative intention to give the defendant any delegated power to revoke or amend the decision of the plaintiff.

The defendant's power to "approve" or "disapprove" what the plaintiff has done originated in an act of 1917 (P. L., *c. 272, s. 6*) providing that a domestic insurance company, on voluntary organization, should file with the Insurance Commissioner their articles of agreement. That act directed the Commissioner to "examine the same." If "it appears that the provisions of the law preliminary to the establishment of the corporation have been complied with," the Commissioner is directed so to certify by an endorsement on the articles, which then are recorded and become the corporate charter. Amendments were directed to be certified in similar manner. P. L., *c. 272, s. 8.* Once the legality appears, approval is mandatory.

Nothing could be plainer than that the only questions to be determined by the Commissioner were whether the articles of agreement or amendments were within the authorization of law and whether they had been legally adopted by the company. The wisdom or the unwisdom of legally permitted acts, if done in a legal manner, was left to the discretion of those having voting rights in the corporation. The approval given to the Commissioner was essentially like the "approval," distinctly so called, given by the Attorney-General of the legality of articles and amendments under the Business Corporations Acts. P. L., *c. 225, ss. 14, 43.* It cannot be successfully argued that the powers of "approval" of the

Commissioner are general and broad, while those of the Attorney-General are limited, yet that was the drift of the argument before us. The powers of both are limited in the same manner.

The amendment of Chapter 272 of the Public Laws by Laws 1937, c. 24 did not change this relative power. It merely provided that both the Commissioner and the Attorney-General should "approve" the articles of agreement and amendments of domestic insurance companies. It could not have been the intention, by giving the Attorney-General limited powers of "approval," to enlarge the former powers of the Commissioner, for the Act of 1937 defines his powers in precisely the same words as have been used ever since 1917. It is this chapter 272, Public Laws, as thus amended without changing the powers of the Commissioner, that bounds his official acts in cases like the present one. Laws 1933, c. 145.

The defendant's powers thus include examination and certification of the legality or illegality of the action taken by the plaintiff, and no more. He may pass upon the question whether the proposed issue is within the limits permitted by the legislature. In this case that question must be answered in the affirmative, and in this respect he is bound to give "approval" as a ministerial act.

The Commissioner may also pass upon questions concerning the legal regularity of the formal steps taken by the plaintiff to effectuate an increase in the guaranty stock. He asserts that notice of the meeting was not properly given as the basis for a valid vote. The notice was merely published once in the Concord Evening Monitor, a newspaper printed and distributed eight full days before the date of the meeting called. The plaintiff, organized in 1886 under general laws, was clothed by the legislature with power to make by-laws determining the manner of calling and conducting its meetings. G. L., c. 147, s. 4. The plaintiff's by-laws provide for no more than the notice given. However reasonable the opinion of the defendant that a better notice could and should have been devised, the legislature has not delegated to him the power to revoke or revise the plaintiff's by-laws. Since the notice given conformed to the applicable law, the defendant's refusal to "approve" on this ground was without warrant.

The defendant also asserts, as a reason for his refusal, that the meeting at which the stock issue and the stock retirement were voted was not attended by a quorum. If he were right about this, the defendant had no power to "approve" the retirement. Again the by-laws of the plaintiff control. They provide that a quorum is

present at a meeting if one-fifth of the voting guaranty fund is represented. When the meeting in question was held, there were outstanding in the guaranty fund 6,197 voting shares. Of these 2,689 voted for the amendment, and none voted against it. The meeting was attended by more than twice the legal quorum. The defendant's action seems to have been based on the mistaken view that the legislature had given him power to substitute his own conception of what is a proper by-law for that of the plaintiff clothed by the legislature with power to make the by-law, and to say that the by-law was insufficient for taking action to increase the stock within legal limits, while it was perfectly valid as the basis for a vote to retire shares in the guaranty fund. His action in refusing to "approve" the new issue for lack of quorum was clearly unjustified and beyond any power granted to him. Limited delegated powers cannot be translated into arbitrary powers to act according to his own unrestricted judgment.

The defendant further says that he has the power to decline "approval" because the present holders of preferred stock had no notice of the meeting. Having no voting rights, they were entitled to no notice. The Commissioner thinks, however, that they will be damaged by the preference given to the proposed stock. But the invasion of the rights of present stockholders, if any is threatened, raises a judicial question, which the complaining parties may have litigated in the courts of law. *Kidd* v. *Company*, 74 N. H. 160. We know of no grant of power to the defendant to determine whether or not there has been such an invasion, even if the attempt to delegate such power would be constitutional. See *Opinion of the Justices*, 87 N. H. 492, 493.

The defendant correctly points out that the voting rights of the proposed stock were not determined by the vote authorizing their issue. The omission, however, is not fatal to the legality of the action taken. The plaintiff concedes that the proposed stock is to have voting rights. This seems to accord with the general rule that stock ownership carries voting rights unless they are limited or denied by the vote authorizing the issue. 5 Fletcher, Cyclopedia Corporations, *ss.* 2025-2029. It is also in accordance with our statutes. P. L., c. 225, s. 63; P. L., c. 272, s. 10.

*Petition granted.*

All concurred.